550 A.2d 377

**WELLCRAFT MARINE CORPORATION**

v.

**Rita ROEDER, Trustee.**

**No. 46, Sept. Term, 1987.**

Court of Appeals of Maryland.

Nov. 29, 1988.

Robert P. Scanlon (Anderson, Quinn & Wyland, on the brief), Rockville, for appellant.

Elizabeth H. Farquhar, Silver Spring, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

COLE, Judge.

We shall herein affirm a trial court which set aside a deed of trust as a fraud on creditors. As a consequence, the subject property may be sold and the proceeds used to satisfy the grantor's indebtedness.

The facts may be summarized as follows. In May, 1981, Cap'n Stan's Boat Center, owned by Samuel and Mary Auxier, closed due to financial difficulties. The petitioner herein, Wellcraft Marine Corporation (Wellcraft), sued Samuel and Mary on Cap'n Stan's debt, which Samuel and Mary had personally guaranteed, and obtained a judgment in the amount of $172,833.32 as of September 29, 1981. To satisfy the judgment, a sheriff's sale of the Auxiers' two Silver Spring properties was set for August, 1985. However, in July of that year, Samuel's sister-in-law, Helen Auxier, through her trustee, the respondent herein, Rita Roeder (Roeder), foreclosed on a deed of trust to the properties dated January, 1979, but not recorded until April, 1980. The deed of trust purported to secure a $100,000 loan from Helen to Samuel. Helen then purchased the two properties

at the foreclosure sale for $100,000; nevertheless, Samuel and Mary retained possession of the properties.

Wellcraft contested the validity of the deed and the resulting foreclosure sale, contending that Samuel Auxier had created the deed of trust to defraud his creditors. Wellcraft's exceptions to the sale were heard in the Circuit Court for Montgomery County (J. McKenna, presiding). To attack the deed, Wellcraft called only one witness, Samuel Auxier, who testified that in 1978, with Helen's approval, he drew three checks on the account of the Dismer–Auxier Co. (a business owned by Helen and managed by Samuel) totaling $100,000. The Dismer–Auxier check journal, maintained by Samuel, listed these checks as "Loan–SJA," (SJA being Samuel's initials). Samuel testified that this loan provided the consideration for the deed of trust. Roeder called the only other witness, Helen, the grantee, whose testimony substantially corroborated Samuel's.

However, serious doubt was cast upon Samuel's credibility and upon the bona fides of the "loan" when Wellcraft showed that Samuel had failed to list the deed of trust to Helen on his personal financial statement for the year 1979. In addition, Samuel's own testimony revealed that he misrepresented his assets at a 1982 deposition taken by Wellcraft. Moreover, Wellcraft introduced into evidence Helen's deposition, in which she admitted that she recalled no conversations with Samuel regarding any repayment obligation, from the time Samuel wrote the checks in 1978 until Wellcraft began legal action against Samuel in 1981. In short, the only evidence that the loan was secured from its inception by the deed of trust was the testimony of Samuel and Helen and documents generated by them.

After considering all of the foregoing, the trial judge found that the testimony of Samuel (and presumably Helen) lacked credibility, and further, that by clear and convincing evidence, the conveyance was fraudulent and therefore invalid. Roeder appealed this outcome to the Court of Special Appeals. The intermediate appellate court reversed the trial court, holding that the evidence was insufficient to

establish that the deed of trust was invalid as a fraudulent conveyance. *Roeder v. Auxier*, 70 Md.App. 50, 519 A.2d 1323 (1987). Wellcraft then petitioned this Court for a writ of certiorari which we granted.

We begin our analysis by noting that Maryland Rule 8–131(c) requires that the judgment of the trial court be left undisturbed unless clearly erroneous and due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses.

The party alleging that a conveyance should be set aside as fraudulent initially bears the burden of proving the fraud. *Sullivan v. Dixon*, 280 Md. 444, 448–449, 373 A.2d 1245 (1977). Nevertheless, "[i]t is well established in this State that facts and circumstances may be such as to shift the burden to the grantee to establish the bona fides of the transaction." *Berger v. Hi–Gear Tire and Auto Supply Inc.*, 257 Md. 470, 475, 263 A.2d 507 (1970). This Court has long recognized this procedure. In *McCauley v. Shockey*, 105 Md. 641, 66 A. 625 (1907), we stated:

From the nature of the case, a creditor attempting to set aside a conveyance as fraudulent can seldom prove as an independent fact the knowledge of or participation in the fraud of the grantor by the grantee. That knowledge or participation must be gathered from the various facts and incidents composing the transactions and its environment. The primary presumption here as elsewhere is in favor of innocence and good faith, but a state of facts may be shown which will negative that presumption and cast upon the grantee the burden of proving his good faith and nonparticipation in the fraudulent purpose of the grantor.

105 Md. at 646, 66 A. 627.

In *Berger*, we set forth nine "generally recognized" indicia of fraud. We note that the following list is not exhaustive:

1. insolvency or indebtedness of the transferor;
2. lack of consideration for the conveyance;

3. relationship between the transferor and transferee;

4. the pendency or threat of litigation;

5. secrecy or concealment;

6. departure from the usual means of business;

7. transfer of the debtor's entire estate;

8. reservation of benefit to the transferor;

9. retention by the debtor of possession of the property.

*Berger v. Hi–Gear Tire & Auto Supply, Inc., supra,* 257 Md. at 476, 263 A.2d 507. Therein we indicated that "where there is a concurrence of several such badges of fraud an inference of fraud may be warranted," thereby shifting the burden of production to the grantee to justify the deed of trust. 257 Md. at 475, 263 A.2d 507.

For example, in *Berger,* this Court found that the presence of several "suspicious circumstances" shifted the burden of production to the grantee. In *Berger,* the assailed deed of trust was created while Hi–Gear was in the process of securing a judgment of $10,760.91 against the Bergers, thereby establishing the first indicia of fraud, indebtedness of the transferor. Additionally, a financial statement of the grantor failed to list the claimed indebtedness to his father-in-law, the grantee, tending to prove that the purported consideration was non-existent. Finally, as the *Berger* trial judge stated, "[t]he only evidence of consideration was Berger's self-serving testimony that he gave the instrument to secure past loans." 257 Md. at 477, 263 A.2d 507.

In the case at bar, four badges of fraud are present. First, the grantor and grantee are related; Samuel is Helen's brother-in-law. Second, the deed of trust was concealed when Samuel failed to list it on his 1979 financial statement. Third, the debtors, Samuel and Mary, by virtue of Helen's acquiescence, have retained possession of the property. Finally, the evidence appears strongly suggestive of a lack of consideration. No documentation exists linking the purported loan to the deed. In fact, the only evidence of consideration was Samuel and Helen's self-serving testimony that the deed of trust was created to secure

the purported loan. The trial court determined that Samuel's testimony completely lacked credibility.

■ Nevertheless, a centerpiece to the respondent's argument before this Court was that even if creation of the deed of trust was fraudulent, no evidence was adduced to implicate Helen, the grantee, in the fraud. We have long recognized that "[e]ven if the grantor has a fraudulent intent, this will not vitiate or impair a conveyance unless the grantee participates in the fraudulent intent." *Berger v. Hi–Gear*, 257 Md. at 475, 263 A.2d 507. The Court of Special Appeals concluded that Helen did not participate in the fraudulent intent. We disagree, believing instead that the grantee's status, testimony, and actions did contribute to the indicia of fraud, that is, the suspicious circumstances and facts present in this case.

First, Helen's deposition testimony indicated she recalled no communications with Samuel regarding any obligation on his part to repay the purported loan. However, at trial she testified that the three checks totalling $100,000 did in fact constitute a loan for which the deed of trust was created as security. In addition to the inherent contradiction between Helen's deposition answers and her testimony at trial, the trial court's explicit rejection of Samuel's credibility, to which we give due regard, constituted an implicit rejection of Helen's credibility. In sum, Helen's failure to testify with consistency or credibility regarding the issue of consideration tends to establish her participation in the fraudulent intent and, further, the lack of any valid consideration for the conveyance. Second, Helen's sister-in-law relationship to the transferor, Samuel, while not *ipso facto* conclusive of fraud, does establish another indicia of the grantee's fraudulent intent. Third, Helen's allowing the supposed debtor, Samuel, and his wife, to retain possession of the property constitutes yet another indication of the grantee's participation in the fraudulent intent.

■■■

■ We view the suspicion generated by these badges of fraud as clearly sufficient to implicate Helen in the fraud and, consequently, to shift to her the burden of proving that the deed of trust was supported by adequate consideration and was in other respects bona fide. In light of the foregoing, we find that the grantee's burden was not even remotely satisfied. Consequently, it was not clearly erroneous for the trial judge to set aside the deed of trust as a fraudulent conveyance.

For the above reasons, the trial judge's order invalidating the deed of trust must be reinstated.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. RESPONDENT TO PAY THE COSTS.