**NATIONAL MORTGAGE WAREHOUSE, LLC,**
Plaintiff

v.

**Joyce TRIKERIOTIS Defendant.**

**No. CIV.A. CCB–01–3275.**

United States District Court,
D. Maryland.

May 15, 2002.

D. Christopher Ohly, Stuart M.G. Seraina, Blank Rome Comisky and McCauley LLP., Baltimore, MD, for Plaintiff.

Francis Joseph Gorman, Christopher C. Bosley, Gorman and Williams PC, Baltimore, MD, for Defendant.

## MEMORANDUM

BLAKE, District Judge.

Plaintiff National Mortgage Warehouse, LLC ("NMW") has sued Defendant Joyce Trikeriotis ("Mrs. Trikeriotis") because it believes she was the beneficiary of a fraudulent conveyance committed by her husband, Christopher Trikeriotis ("Mr. Trikeriotis"), while acting in his capacity as an agent for Bankers First Mortgage Company, Inc. ("Bankers First" or "Bankers"). Now pending is Mrs. Trikeriotis's Motion to Dismiss. The motion has been briefed fully, and no hearing is necessary.[1] *See* Local Rule 105.6. For the reasons that follow, the defendant's motion will be denied.

## BACKGROUND

This action arises from a mortgage lending scheme between a local mortgage lender, Bankers First, and a title agent, Title Express, Inc., to defraud national mortgage lenders of millions of dollars by submitting loan documents for nonexistent borrowers and using the funds advanced for private gain. It is undisputed that both Kent Baklor, president of Bankers First, and Christopher Trikeriotis, president of Title Express and general counsel for Bankers First, knowingly participated in the scheme. *See United States v. Christopher Trikeriotis*, Crim. No. CCB–01–0442 (D.Md. Sept. 21, 2001) (defendant pleads guilty to bank fraud and admits to details of crime in a statement of facts); *United States v. Kent Baklor*, Crim. No. CCB–01–0336 (D.Md. Aug. 3, 2001) (defendant pleads guilty to bank fraud). NMW, the plaintiff in the motion now pending, was one of two national mortgage lenders defrauded as a result.[2]

1. The plaintiff's Motion for Leave to File Surreply will be granted. The court does not, however, find any of the additional arguments raised for the first time in the Defendant's Reply Memorandum and the Plaintiff's Surreply determinative of the issues before it.

2. NMW extended a line of credit to Bankers First for the purpose of funding residential

In the action under consideration, NMW asserts that Mr. Trikeriotis transferred a substantial portion of his ill-gotten gains from the mortgage lending scheme to Mrs. Trikeriotis. (*See* NMW Complaint, ¶ 23.) It further alleges that Mr. Trikeriotis, acting as an agent for Bankers First, caused Mrs. Trikeriotis to be put on Bankers First's payroll, even though she did not work for, or provide goods and services to, Bankers First. (*Id.* at ¶ 24.) According to the plaintiff, Mrs. Trikeriotis was aware of Mr. Trikeriotis's efforts, and in fact participated in the scheme by filling out an Employee Information Sheet for Bankers First. (*Id.* at ¶ 25.) NMW further contends that Bankers First paid Mrs. Trikeriotis a yearly salary of $65,000, which was subsequently increased to $125,000. (*Id.*) Mrs. Trikeriotis allegedly has retained some or all of the money, in addition to using it to pay for the family's home, motor vehicles, and lavish lifestyle. (*Id.* at ¶¶ 21, 26.) The first four counts of NMW's complaint are brought under Maryland's Uniform Fraudulent Conveyance Act ("MUFCA"), which is codified at Md. Comm. Law Code § 15–201 *et. seq.* The remaining counts assert claims for violation of the Maryland Spousal Liability Statute, codified at Md. Family Law Art. § 4–301, and subsequent transferee liability pursuant to Md. Com. Law Art. § 15–201, *et seq.* Mrs. Trikeriotis sets forth a number of arguments contending that the

complaint should be dismissed. The court will deny defendant's motion.

### STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). When ruling on a 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations, as well as all reasonable inferences therefrom, as true. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin,* 980 F.2d at 952; *Westray v. Porthole, Inc.,* 586 F.Supp. 834, 836 (D.Md.1984). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994); *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995) (affirming Rule 12(b)(6) dismissal

---

mortgages. For each loan it wanted funded, Bankers was required to submit a written request for an advance, together with unsigned, but otherwise complete, copies of documents that were to be signed at closing. NMW would then wire the funds to Title Express. Mr. Trikeriotis, as president of Title Express, was supposed to close the loans by obtaining necessary signatures and disbursing the money to the residential loan borrowers. Bankers First was expected to repay NMW after finding a third party investor willing to purchase the loans.

Unbeknownst to NMW, Bankers First and Title Express created and submitted several loan packages for nonexistent borrowers and kept for themselves the monies NMW wired in response. NMW has sued them to recoup its losses, which totaled $4,894,960.00. This court entered judgment in favor of NMW and against Mr. Trikeriotis and Title Express, jointly and severally, on January 15, 2002. *National Mortgage Warehouse v. Bankers First, et. al.,* 190 F.Supp.2d 774 (D.Md.2002).

with prejudice because plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law); *Faulkner Adver., Inc. v. Nissan Motor Corp.,* 945 F.2d 694, 695 (4th Cir.1991) ("self-serving, inaccurate legal conclusions cannot rescue a factually deficient complaint").

■■■■ By submitting, among other things, the deposition of Mrs. Trikeriotis, the defendant invites the court to treat the motion to dismiss as a motion for summary judgment. When "matters outside the pleadings are presented to·and not excluded by the court, [a 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such·a motion by Rule 56." Fed. R.Civ.P. 12(b). " '[R]easonable opportunity' means that all parties must be given 'some indication by the court ... that it is treating the 12(b)(6) motion as a motion for summary judgment, with the .consequent right in the opposing party to file counter affidavits and pursue reasonable discovery.' " *Fare Deals Ltd. v. World Choice Travel.Com, Inc.,* 180 F.Supp.2d 678, 692 (D.Md.2001) (*quoting Gay v. Wall,* 761 F.2d 175, 177 (4th Cir.1985) (internal citations omitted)). Where a party knows, however, that materials outside the pleadings are before the court, that party is considered to have notice that the motion to dismiss may be treated as a motion for summary judgment. *Fare Deals Ltd.,* 180 F.Supp.2d at 693. In addition to the notice requirement, the court must also conclude that the nonmoving party has had sufficient opportunity to discover information essential to its opposition. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

(*citing* Fed.R.Civ.P. 56(f)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court will not convert defendant's motion to dismiss into a motion for summary judgment. Although the notice element has been met, the court is not satisfied that NMW has had adequate opportunity for discovery about the alleged conveyances to Mrs. Trikeriotis. Therefore, the additional materials submitted by the defendant will not be considered, and the court will examine the motion before it under the framework of Rule 12(b)(6).

## *ANALYSIS*

I. Failure to Set Forth a Claim for which Relief may be Granted

■■■ The court first considers whether NMW's complaint states a claim upon which relief may be granted. *See* Fed. R.Civ.P 12(b)(6). The defendant argues that it does not because it fails to allege that Mrs. Trikeriotis had fraudulent intent. Fraud by the recipient, however, is not an element of any of the causes of action set forth in the complaint. "To maintain a suit pursuant to MUFCA, the plaintiff needs to allege that a creditor-debtor relationship exists and that the debtor has fraudulently transferred assets." *Dixon v. Bennett,* 72 Md.App. 620, 531 A.2d 1318, 1320 n. 2 (1987). In Maryland, "a debtor, for a fairly equivalent consideration, whether presently arising or being in satisfaction of an antecedent debt, may transfer in good faith all or a part of his property to one of his creditors." *Long v. Dixon,* 201 Md. 321, 93 A.2d 758, 759 (1953). Such a conveyance is fraudulent, however, when rendered without fair consideration,[3] and

---

3. Fair consideration is given for property or an obligation, when:

(1) In exchange for the property or obligation, as a fair equivalent for it and in

by a person or entity who (1) "is or will be rendered insolvent by it," [4] (2) is "engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital," [5] (3) "intends or believes that he will incur debts beyond his ability to pay as they mature," [6] or (4) has "actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors." [7] The intent of Mrs. Trikeriotis, as grantee, is determinative only if the transfers made to her were fair consideration in satisfaction of a bona fide debt. *Long*, 93 A.2d at 759, 762 (upholding deeds from parents to sons because the deeds were to satisfy a bona fide debt and the sons did not participate in any fraud against the parents' other creditors); *see also Wellcraft Marine Corp. v. Roeder*, 314 Md. 186, 550 A.2d 377, 380 (1988) (*quoting Berger v. Hi-Gear*, 257 Md. 470, 263 A.2d 507, 510 (1970)) (voiding a deed from defendant to his sister-in-law because the transfer was not supported by adequate consideration, and the sister-in-law was implicated in the fraud); *Braecklein v. McNamara*, 147 Md. 17, 127 A. 497, 499 (1925) (*quoting Prewit v. Wilson*, 103 U.S. 22, 24, 13 Otto 22, 26 L.Ed. 360(1880)) (upholding a deed from husband to wife because it was in satisfaction of a prenuptial agreement, and the wife was not aware of any intent by her husband to defraud his creditors). In other words, contrary to Mrs. Trikeriotis's insistence that she must be shown to have participated in her husband's fraudulent behavior, her intent is essential only if the conveyances to her were made for fair consideration or to satisfy an antecedent obligation.

The complaint alleges the facts necessary to maintain a claim under Md. Com. Law § 15–201, *et. seq.* NMW asserts that it was a creditor of Bankers First (*see* NMW Complaint, ¶¶ 18, 22); Bankers First, by and through its agents Chris Trikeriotis and Kent Baklor, participated in a mortgage lending fraud against NMW

---

good faith, property is conveyed or an antecedent debt is satisfied; or (2) The property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared to the value of the property or obligation obtained.
*See* Md. Com. Law § 15–203.

4. Section 15–204 provides:

Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.
Md. Com. Law § 15–204.

5. Section 15–205 provides:

Every conveyance made without fair consideration when the person who makes it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and other persons who become creditors during the continuance of the business or transaction without regard to his actual intent.
Md. Com. Law § 15–205.

6. Section 15–206 provides:

Every conveyance made and every obligation incurred without fair consideration when the person who makes the conveyance or who enters into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.
Md. Com. Law § 15–206.

7. Section 15–207 provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors.
Md. Com. Law § 15–207.

(*see id.* at ¶¶ 7–17); Bankers First was insolvent, or, at the least, under-capitalized (*see id.* at ¶¶ 18, 22); Chris Trikeriotis transferred some of the money that he took from NMW to Joyce Trikeriotis (*see id.* at ¶ 23); the monies transferred between Mr. and Mrs. Trikeriotis was used for purposes other than providing necessaries for the family (*id.* at ¶¶ 21, 26); Chris Trikeriotis, as an agent of Bankers First, put Joyce Trikeriotis on Bankers First's payroll (*see id.* at ¶ 24); Joyce Trikeriotis did not perform work for, or provide goods and services to, Bankers First (*see id.*); and Bankers First conveyed checks to her reflecting yearly salaries of $65,000 and $125,000 (*see id.* at ¶ 25). These allegations also meet the requirements of a claim under Md. Fam. Law § 4–301(d)(2)(ii).[8]

Although Mrs. Trikeriotis avers that she never received checks from Bankers First, did not exercise sufficient control over the funds transferred into her joint account with Mr. Trikeriotis to be considered a transferee, did not have fraudulent intent, and did not receive or use monies transferred from Mr. Trikeriotis to her other than in "consideration" for necessaries such as groceries and shelter,[9] these assertions are, at best, affirmative defenses. A Rule 12(b)(6) motion does not invite resolution of contested facts or examination of potential defenses. *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership,* 213 F.3d 175, 185 (4th Cir.2000) (*citing Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996)); *Republican*

*Party of N. C.,* 980 F.2d at 952. Accordingly, defendant's motion to dismiss on these grounds will be denied.

## II. Failure to Allege Fraud in Accordance with the Requirements of Rule 9(b)

Defendant next maintains that NMW has failed to allege fraud with sufficient particularity under Fed.R.Civ.P. 9(b). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *See* Fed.R.Civ.P. 9(b). Thus, a plaintiff alleging fraud must make specific allegations regarding matter such as " 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation, and what [was] obtained thereby.' " *Kerby v. Mortgage Funding Corp.,* 992 F.Supp. 787, 799 (D.Md.1998) (*quoting Windsor Assoc. Inc. v. Greenfeld,* 564 F.Supp. 273, 280 (D.Md. 1983)); *see also Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 249–50 (D.Md.2000). Failure to comply with the pleading requirements of Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 n. 5 (4th Cir.1999).

Although a complaint which fails to specify the time, place, and nature of the fraud may be dismissed pursuant to a Rule

---

**8.** Section 4–301(d) provides: "A transfer of property between spouses is invalid if made in prejudice of the rights of present creditors." *See* Md. Fam. Law § 4–301(d)(2)(ii).

**9.** Under Maryland law, "there is 'fair consideration' for the payment of money by a debtor to satisfy his obligation to provide necessaries for his wife and children." *Pearce v. Micka,* 62 Md.App. 265, 489 A.2d 48, 54 (1985) (*cit-*

*ing* Md. Com. Law Code Ann., §§ 15–201(c) and (e), 15–203, 15–204). Moreover, such expenditures do not constitute interspousal transfers of property to the prejudice of creditors within the meaning of Md. Fam. Law § 4–301(d)(2)(ii). "Providing necessaries for a family is not a transfer of property from one spouse to another." *Pearce,* 489 A.2d at 55.

12(b)(6) motion, *see Adams,* 193 F.R.D. at 250 (*citing Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 980 (4th Cir. 1990)), a court should hesitate to dismiss if it finds " '(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.' " *Id.* (*quoting Harrison,* 176 F.3d at 784). " 'The most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading.' " *Kerby,* 992 F.Supp. at 800 (*quoting Windsor Assoc.,* 564 F.Supp. at 280); Wright and Miller, *Federal Practice and Procedure,* § 1298 at 648 (1990). In addition to providing a defendant with adequate notice, Rule 9(b) also protects a defendant's reputation and goodwill, and endeavors to reduce the number of strike suits. *Kerby,* 992 F.Supp. at 800 (*citing Gollomp v. MNC Financial, Inc.,* 756 F.Supp. 228, 232 (D.Md.1991)).

■ NMW's complaint provides Mrs. Trikeriotis with adequate notice of the claims against her. It describes the transactions allegedly constituting the fraudulent conveyance; identifies the participants in those transactions; alleges that the transfers were without fair consideration, (NMW Complaint, ¶¶ 23–26); and indicates that Bankers First was rendered unable to pay what it owed to NMW, (*id.* at ¶¶ 18, 22). Both parties, moreover, have substantial prediscovery evidence of the facts alleged because both Mr. Trikeriotis and Mr. Baklor have pled guilty to criminal charges arising from their participation in defrauding NMW, and this court has entered criminal and civil judgments against them and their respective companies. Mrs. Trikeriotis has been deposed in

connection with the civil suits. The court will therefore deny defendant's motion to dismiss on the basis of Rule 9.

III. Failure to Join Necessary Parties Pursuant to Rule 19(a)

■ Mrs. Trikeriotis next argues that the complaint should be dismissed for failure to name Bankers First and Christopher Trikeriotis as necessary parties. She maintains that under Maryland law, a debtor must be joined in an action by a creditor against the recipient of a fraudulent conveyance. (*See* Defendant's Mot. to Dism., pp. 7–9 (*quoting Lovejoy v. Irelan,* 17 Md. 525 (1861)).) In a diversity case, however, the question of joinder is one of federal law. *Rowland v. Patterson,* 852 F.2d 108, 110 (4th Cir.1988); *Muirfield (Delaware), L.P. v. Pitts,* 17 F.Supp.2d 600, 607 (W.D.La.1998); *Wright v. Schebler,* 37 F.R.D. 319, 320 (S.D.Iowa 1965). Rule 19(a) of the Federal Rules of Civil Procedure governs the joinder of necessary parties:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). Regarding Rule 19(a), the Fourth Circuit has given the following guidance:

Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result. *See RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F.Supp. 1457, 1463 (M.D.N.C.1995) (*relying on Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). Such a decision "must be made pragmatically, in the context of the substance of each case, rather than by procedural formula," *Patterson*, 390 U.S. at 119 n. 16, 88 S.Ct. 733, by considering "the practical potential for prejudice" to all parties, including those not before it. *Schlumberger Indus., Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir.1994). *Owens–Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir.1999).

 The court concludes that Mr. Trikeriotis and Bankers First are not "necessary" parties to the matter pending before it. Their absence or presence does not affect the court's ability to afford complete relief to NMW if it proves its claims. Some of the issues relating to Chris Trikeriotis and Bankers First, such as their intent to defraud NMW in the mortgage lending scheme, and their past and present indebtedness to NMW, have been established beyond a reasonable doubt in prior proceedings.[10] Other matters relating to their involvement in the alleged transfers to Mrs. Trikeriotis may be determined by either calling them as witnesses if necessary, or using documentary evidence. Mrs. Trikeriotis has not shown that she might be held to inconsistent or multiple obligations as a result of this suit, nor have Mr. Trikeriotis or Bankers First claimed impairment of their interests by not being named as parties to this action. Accordingly, the defendant has not met the Rule 19(a) standard for determining whether a party is "necessary," and the court will deny her motion to dismiss on this basis.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. defendant's motion to dismiss is **DENIED**; and

2. copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.

---

10. Indeed, if Mr. Trikeriotis and Mr. Baklor were defendants in the present lawsuit, they would be collaterally estopped from denying liability as to these matters. *United States v. Wight*, 839 F.2d 193, 195–96 (4th Cir.1987) ("[A] defendant is precluded from retrying issues necessary to his plea agreement in a later civil suit."); *see also Appley v. West*, 832 F.2d 1021, 1026 (7th Cir.1987); *Ivers v. United States*, 581 F.2d 1362, 1366–67 (9th Cir. 1978); *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir.1974).