**UNITED STATES of America**

v.

**Paul J. MRAZ, Sr. et. al**

**No. CIV. A. CCB–03–332.**

United States District Court,
D. Maryland.

July 28, 2003.

Thomas F. Corcoran, Office of the United States Attorney, Thomas M. DiBiagio, Do Not Mail, Baltimore, MD, for Plaintiff.

Paul J. Mraz, Sr., Wilmington, DE, Michael S. Mraz, Peninsula, OH, David F. Albright, Jr., Baltimore, MD, for Defendants.

Nancy M. Mraz, Bethesda, MD, Pro se.

## MEMORANDUM

BLAKE, District Judge.

Before the court are a motion to dismiss filed by Paul J. Mraz, Sr., a motion to dismiss, or, in the alternative, for summary judgment on Mr. Mraz's counterclaim filed by the United States, a motion to strike filed by the United States, and a motion for default judgment filed by the United States. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Mr. Mraz's motion to dismiss will be denied, the United States's motion to dismiss will be granted, the motion to strike will be granted, and the motion for default judgment will be denied.

*Factual Background*

Paul J. Mraz, Sr., the defendant in this action, was a defendant in *United States v. Maryland Sand & Gravel Inc., et. al,* Civil Action No. HAR 89–2869, ("the underlying action") in this court. On January 29, 1997, a judgment was entered in the underlying action against Mr. Mraz. He has yet to pay this judgment.

On June 13, 1996, the Paul J. Mraz Irrevocable Retirement Trust ("the Trust") was established for the benefit of Mr. Mraz. Two of Mr. Mraz's children, Michael S. Mraz and Nancy M. Mraz, were named as trustees of the Trust. They are defendants in this action in their capacity as trustees. The United States alleges that Mr. Mraz has made a number of

conveyances to the trust to avoid the judgment against him in the underlying action, and has brought this action under the Federal Debt Collection Procedures Act ("FDCPA") to set aside these conveyances.

Mr. Mraz has filed two counterclaims based on the actions of the trial attorney for the United States in the underlying action. Mr. Mraz was in the process of negotiating a settlement with the United States under which he would be relieved of any financial obligations from the judgment in exchange for providing evidence for use by the United States in subsequent related cases. The negotiations did not resolve the dispute between the parties, however, and the United States sought and obtained a default judgment against Mr. Mraz. Mr. Mraz alleges that he relied to his detriment on representations by the trial attorney about her authority to approve the settlement and seeks to recover on an estoppel theory. He further alleges that the United States had an implied contract with him which it breached.

### Standard for Motions to Dismiss

Mr. Mraz has filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The government's motion to dismiss Mr. Mraz's counterclaims is also governed by Rule 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). When ruling on a 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations, as well as all reasonable inferences therefrom, as true. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin,* 980 F.2d at 952; *Westray v. Porthole, Inc.,* 586

F.Supp. 834, 836 (D.Md.1984). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994); *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995) (affirming Rule 12(b)(6) dismissal with prejudice because plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law); *Faulkner Advertising. v. Nissan Motor Corp.,* 945 F.2d 694, 695 (4th Cir.1991) ("[S]elf-serving, inaccurate legal conclusions cannot rescue a factually deficient complaint").

### The Motion to Dismiss Filed by Paul J. Mraz. Sr.

■ Defendant Paul Mraz argues that this action is time-barred. Twenty-eight U.S.C. § 3306(b) defines the statute of limitations for this type of action:

> A claim for relief with respect to a fraudulent transfer or obligation under this subchapter is extinguished unless action is brought ... 6 years after the transfer was made or the obligation was incurred ....

Mr. Mraz argues that the six year limitation time begins when the allegedly fraudulent transfer which is the subject of the suit happens, or an obligation which the transfer was to satisfy was incurred, whichever is earlier. Thus, on this reading, an action to void a transfer which happened five years ago, but was prompted by an obligation seven years ago, would be time-barred. Mr. Mraz would benefit

from this reading, because, in his view, the obligation to transfer property arose when the Trust was created on June 13, 1996, more than six years before this suit was initiated. The United States responds by arguing that the six year limit starts either when the transfer happens, or when the obligation is incurred, whichever is later. (Pl. Opp. to Mot. to Dismiss at 3.)

The court adopts the government's position. The government's reading of section 3306(b) allows the "or" in the phrase "transfer was made or the obligation was incurred" to be read in the most natural way; that if either has happened within six years, it may be the subject of a suit. Because the government's interpretation is the more natural, and is more consistent with the purposes of the FDCPA, the court will adopt the government's reading of section 3306(b) and hold that the statute of limitations did not start to run until the actual transfer, as opposed to the creation of the obligation, was put into effect. *Cf. United States v. Gelb,* 783 F.Supp. 748, 755 (E.D.N.Y.1991) (holding that the date a transfer is perfected is when the statute of limitations starts to run, not the date the transfer is initiated).[1]

The judgment was entered against Mr. Mraz on January 29, 1997, and this suit was initiated on February 3, 2003. Hence, the only transfers of property which can form the basis for this action are those which occurred after February 3, 1997. Consistent with this, the government

states that it "seeks to avoid fraudulent transfers Paul J. Mraz made to the [Trust] after February 3, 1997 with the intent to defraud the Government and for which he received no equivalent value and rendered him insolvent," (Pl. Opp. to Mot. to Dismiss at 5), and the complaint seeks only to set aside a number of transfers which are alleged to have happened on June 5, 1997 or later. (Complaint at ¶¶ 14–18.)

Mr. Mraz argues that some of the conveyances in the complaint actually happened earlier than the times alleged. While there may be a factual question whether particular properties were transferred when the trust was created or at a later date, resolution of these issues would be inappropriate on a motion to dismiss under 12(b)(6). Because the complaint seeks only to set aside transfers of property which happened after February 3, 1997, the motion to dismiss will be denied.[2]

*The Government's Motion to Dismiss Mr. Mraz's Counterclaims*

Mr. Mraz has alleged two counterclaims against the United States for promissory estoppel and breach of contract. The government has filed a motion to dismiss or, in the alternative, for summary judgment, on each of these claims. For the reasons stated below, the motion to dismiss Mr. Mraz's counterclaims will be granted.

In his promissory estoppel counterclaim, Mr. Mraz alleges that Susan Lively, the trial attorney in the underlying action,

1. Further, Mr. Mraz's argument would require the unlikely result that one cannot know if a suit to set aside a transfer is time barred under section 3306(b) without first determining if there is a prior irrevocable obligation which the transfer satisfies. Permitting a prior revocable obligation to *start* the FDCPA running would be even more likely to frustrate the purposes of the statute, as a debtor could shield property by "obligating" himself to transfer property and later setting that obligation aside.

2. Mr. Mraz also argues that the transfer of assets from the sale of equipment owned by Spectron, Inc., should not be a part of this suit because the assets belonged to Spectron and he transferred them only in his capacity as conservator. This is a factual disagreement with allegations contained in the complaint and is not appropriately resolved in a motion under Rule 12(b)(6).

"misrepresented ... her authority and intention to ... settle the judgment against" Mr. Mraz. (Counterclaim at ¶ 20.) Mr. Mraz further alleges that Ms. Lively "misbehaved" by, *inter alia,* "her hasty abandonment of the settlement process, her failure to acquire the proper authorizing signatures [on a proposed settlement agreement], ... and her failure to notify the counterclaimant that the settlement was of no value in time for him to take remedial action." (Counterclaim at ¶ 23.) Mr. Mraz seeks to have the judgment in the underlying case set aside.

■ Assuming without deciding that these facts are sufficient to state a claim for estoppel generally[3], Mr. Mraz's allegations are not sufficient to state a claim for estoppel against the United States. As the Fourth Circuit has said, "The Government is simply not bound by the negligent, unauthorized acts of its agents. Federal law is clear that estoppel is rarely, if ever, a valid defense against the Government absent proof of some affirmative misconduct by a Government agent ...." *United States v. Vanhorn,* 20 F.3d 104, 112 n. 19 (4th Cir.1994). *See also Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 66, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Mr. Mraz has stated that Ms. Lively "affirmatively misbehaved" but the only conduct which he has alleged which supports this claim is that she was "hasty," "failed to acquire proper authorizing signa-

tures," and had an "overriding desire to prematurely enter into new duties" at a new job to which she was moving, which compromised the attention she paid to working with Mr. Mraz. (Counterclaim at ¶ 23.) These actions are evidence of negligence, not affirmative misconduct. The court cannot agree that the facts alleged support Mr. Mraz's characterization of Ms. Lively's actions as affirmative misconduct, as distinct from negligent acts. *See Faulkner Advertising,* 945 F.2d at 695 ("[A] court cannot be shackled from granting a motion to dismiss merely because [the plaintiff] propounds a legal conclusion, where the defects of that conclusion are conspicuous from the facts asserted."). For that reason, Mr. Mraz's claim of estoppel against the United States cannot succeed, and the motion to dismiss will be granted with respect to this counterclaim.

■ Mr. Mraz also has alleged that the United States breached a contract to him. Mr. Mraz does not maintain that he has an express contract with the government. Instead, he alleges that an implied contract was formed when he signed and returned a consent decree and financial affidavit indicating that he was unable to pay the judgment against him. (Counterclaim at ¶ 25.) Mr. Mraz also alleges that because he complied with the terms of the settlement agreement by providing evidence of value to the United States in the

---

**3.** There is reason to be skeptical that the elements of estoppel are satisfied. Estoppel applies "[i]f one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act" *Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (internal citations omitted). Assuming Ms. Lively did misrepresent the authority she had to approve a settlement, aside from the conclusory statement that Mr. Mraz "reasonably and with justification relied" on Ms. Lively's mis-

representations, there are no facts alleged which establish that this reliance was reasonable, and, in light of at least one of the documents attached to Mr. Mraz's Answer and Counterclaim, which indicates that at other times Ms. Lively explained that she did need approval from others, Mr. Mraz's reliance on any misrepresentations appears unreasonable. (*See* Counterclaim Ex. 3, Lively letter of August 15, 1996.) ("I will draft a consent decree or stipulation (*whichever my management believes to be appropriate* ) which I will forward to you *once it is approved by my office.*") (emphasis added).

underlying litigation, and the United States accepted this evidence, the government acknowledged that a contract had been entered into. (Counterclaim at ¶ 26.)

■ The government can be bound by an implied contract when four elements are met: "(1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority in the government representative to bind the government." *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1060 (Fed.Cir.2001); *Gardiner v. Virgin Islands Water & Power Authority*, 145 F.3d 635, 644 (3d Cir.1998) ("[O]nly those with specific authority can bind the government contractually; even those persons may do so only to the extent that their authority permits."). Mr. Mraz has not alleged that Ms. Lively has actual authority to bind the government. For that reason, he has failed to establish that he had a contract with the United States. His counterclaim for breach of contract will, therefore, be dismissed.

### The Government's Motion to Strike

■ Trustee Nancy Mraz has filed a pro se answer to the complaint in this case. In response, the United States has filed a motion to strike Ms. Mraz's pleading, and all other papers filed by her, on the grounds that, as a non-lawyer, she cannot represent the trust.

The complaint does not name the trust as a defendant. It names Ms. Mraz and Michael Mraz individually, but in their capacity as trustees. Further, the complaint seeks relief which is available from the trustee defendants in their official capacities as trustees. (Complaint at ¶¶ 20, 23.)

Thus, Ms. Mraz is a defendant in this case only in her capacity as a trustee, and not in her personal capacity.

A trustee appearing in "a solely representative capacity … requires a lawyer in federal court." *United States v. Ponte*, 246 F.Supp.2d 74, 80 n. 13 (D.Me.2003). *See also Rowland v. California Men's Colony*, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("[S]ave in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney."); *Knoefler v. United Bank of Bismark*, 20 F.3d 347, 348 (8th Cir.1994) ("A nonlawyer, such as these proported 'trustee(s) pro se' has no right to represent another entity, i.e., a trust, in a court of the United States."); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697–98 (9th Cir.1987) ("Because [a trustee of the plaintiff trust] is not the actual beneficial owner of the claims being asserted by the Trusts (so far as one can tell from the record), he cannot be viewed as a 'party' conducting his '*own* case personally' within the meaning of [28 U.S.C. § ] 1654. He may not claim that his status as trustee includes the right to present arguments *pro se* in federal court."). Therefore, the United States is correct that the trustee defendants in this case may only appear through counsel. Accordingly, the motion to strike will be granted.[4]

### Motion for Default Judgment

■ The United States has filed a motion for default judgment against Nancy

---

4. Nancy Mraz has filed a motion asking the court "to postpone consideration of the United States' motion to strike the pleadings of Defendant Nancy M. Mraz, Trustee, pending arriving at a decision on the Paul J. Mraz, Sr. Motion to Dismiss Complaint." (Mot. to Stay at ¶ 5.) Because a decision has been reached on Mr. Mraz's motion to dismiss, Ms. Mraz's motion to stay will be denied as moot.

Mraz. Ms. Mraz filed her answer to the complaint on April 30, 2003. Her time to file an answer expired on April 9, 2003, and the Clerk entered default on April 25, 2003. Because the United States has shown no prejudice suffered from Ms. Mraz's late filing of her Answer to the United States' complaint, mindful of Ms. Mraz's pro se status at the time, and considering the Fourth Circuit's strong preference for resolving cases on their merits, the court will exercise its discretion to deny the government's motion for default judgment without prejudice. *See Dow v. Jones,* 232 F.Supp.2d 491, 494–95 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 453 (4th Cir.1993) for the proposition that the Fourth Circuit has a "strong policy" that "cases be decided on their merits").

In light of the ruling on the government's motion to strike, however, Ms. Mraz will need to retain an attorney in this case in order to file a new answer. Similarly, it appears that the other trustee defendant, Michael Mraz, also will need to obtain counsel. Ms. Mraz will need to file, through her attorney, a motion to set aside the Clerk's entry of default under Rule 55(c). *See generally Wainwright's Vacations v. Pan American Airways,* 130 F.Supp.2d 712, 717–20 (D.Md.2001). The court will grant Ms. Mraz and Michael Mraz twenty-one days to have counsel enter an appearance, and fourteen days thereafter to file an answer to the government's complaint, as well as a motion to set aside the entry of default as to Ms. Mraz.

### Conclusion

For the reasons set forth above, the motion to dismiss filed by Mr. Mraz will be denied. The government's motion to dismiss Mr. Mraz's counterclaims will be granted. The court will also grant the government's motion to strike and deny its motion for default judgment without prejudice.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

(1) the government's motion to strike answer to complaint and pleadings filed by Nancy M. Mraz, trustee of the Paul J. Mraz Irrevocable Trust (docket number 11) is **granted;**

(2) Paul J. Mraz, Sr.'s motion to dismiss the complaint (docket number 14) is **denied;**

(3) the government's motion to dismiss counterclaim (docket number 17) is **granted;**

(4) the government's motion for summary judgment on Paul J. Mraz, Sr.'s counterclaim (docket number 17) is **denied as moot;**

(5) Nancy M. Mraz's motion to postpone consideration of the government's motion to strike answer and pleadings (docket number 21) is **denied as moot;**

(6) the government's motion for entry of default judgment as to Nancy M. Mraz (docket number 9) is **denied without prejudice;**

(7) Nancy M. Mraz and Michael Mraz shall have 21 days from the entry of this order to have counsel enter an appearance, and 14 days thereafter to file an answer to the complaint and a motion to set aside the entry of default as to Ms. Mraz; and

(8) the Clerk shall send copies of this Order and Memorandum to counsel of record and to Paul J. Mraz, Sr., Nancy Mraz, and Michael Mraz.